[Civ. No. 3723.   Fourth Dist.   Dec. 6, 1948.]

Estate of H. H. WELSH, Deceased. JOHN K. GRIFFIN et al., as Executors, etc., Petitioners and Appellants, v. EDWARD L. KELLAS et al., Contestants and Appellants; THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al., Respondents.

44

. Crossland & Crossland, James T. Barstow and Lawrence W. Young for Petitioners and Appellants.

. Richard Z. Lamberson, Breckinridge Thomas and Lamberson & Thomas for Contestants and Appellants.

Jno. U. Calkins, Jr., Calkins, Hall, Linforth & Conrad and John E. Landon for Respondents.

GRIFFIN, J.—H. H. Welsh, an attorney, aged 88 years, died on February 17, 1945. He left an estate valued in excess of $600,000. His will was dated July 21, 1944, and the codicil thereto was dated January 20, 1945. They were both duly admitted to probate. Petitioners John K. Griffin and Frank L. Pettey qualified as executors. By the terms

of the will decedent devised to the Regents of the University of California, in trust, several thousand acres of land in Madera and Fresno Counties and 200 shares of stock in the Standard Oil Company. One thousand dollars was left in trust for the erection and rebuilding of the old Millerton court house. To John K. Griffin was left a gold watch, to Jennie B. Rigby a Buick automobile, to the decedent's nephew, Arthur Atchinson, $22,000 in cash, to Edward L. Kellas certain personal property in addition to $5,000 in cash, and to Amy J. Forrest $5,000. In paragraph NIN*E*TH he devised certain described real property and profits thereon to John K. Griffin, as trustee, to hold and manage and to pay Dorothy Lee Griffin from the income $250 per month for life, and the remainder to her issue, if any, and if none, then the corpus of the trust was to revert to John K. Griffin, Jennie B. Rigby and James B. Griffin, share and share alike. Paragraph B of the codicil (hereinafter referred to as paragraph NIN*E*TH) revoked paragraph NIN*E*TH of the original will and in lieu thereof provided that the certain described real property and income therefrom be managed by the same trustee but directed that Dorothy Lee Griffin receive $125 per month for life and Amy J. Forrest receive a like sum for her life. In other respects the provisions of the codicil were similar to the provisions of paragraph NIN*E*TH of the original will. Paragraph TENTH provided specifically:

"TENTH: I give, devise and bequeath the gifts set forth in Paragraph Nineth hereof free and clear of all liens, debts, demands, claims, commissions, fees, expenses of administration and taxes of all kinds levied or assessed against said property at the time of my death or in virtue of my death or the transfer of said property, including inheritance and federal estate taxes, and including income taxes of all kings accruing prior to the distribution of my estate and I direct that all of said liens, debts, demands, claims, commissions, fees, expenses of administration and all of said taxes be paid from the other gifts made in this will in proportion to the value thereof as set forth in the inventory and appraisement filed in my estate proceedings."

Under paragraph ELEVENTH all of the residue of decedent's estate was left to John K. Griffin, Jennie B. Rigby and James B. Griffin, share and share alike.

Appellants and cross-respondents, as executors, and Jennie B. Rigby and John K. Griffin, individually and as residuary legatees, state in their brief that "Every question and every

issue arising upon these appeals find their origin in the unfortunate language employed in paragraph TENTH of the testator's will. The question and issue presented is, how is paragraph TENTH of the will to be interpreted and construed in respect to charging the devisees and legatees named in the testator's will, other than those named in paragraph B of the codicil, for the debts, taxes and expenses which said paragraph B clearly lifts from the beneficiaries named in said paragraph and places the burdens thereof on the decedent's other devisees and legatees," i. e., "shall paragraph TENTH of the will be interpreted and construed so as to charge all of the testator's devisees and legatees, except those exempted by paragraph TENTH of the will *proportionately* with the general debts of the estate, accrued and unpaid taxes existing at the time of the testator's death, expenses of administration and all other liens, debts and charges that the law does not specifically place elsewhere, or shall said paragraph TENTH be interpreted and construed so as to charge and satisfy such debts, claims, taxes and expenses wholly from the residuary portion of the testator's estate?" (Italics ours.) It is conceded by all parties that the decedent's estate is entirely solvent and that there remain sufficient funds under the residuary clause of the will to meet all disputed demands or claims against it.

The executors presented their first account and petition for ratable distribution. Kellas, Crittenden, Regents of the University of California and Forrest filed objections thereto. No question is raised as to the correctness of the account pertaining to receipts and expenditures. The trial court, in interpreting the terms of the will and codicil, in connection with the statutes claimed to be applicable, found:

(1) "That paragraph X of said will is not ambiguous or uncertain; that decedent, by means of said paragraph X, designated by said will that gifts contained and specific property described in paragraph IX, as modified by paragraph B of the Codicil thereto, should pass free and clear of all liens, debts, claims, commissions, fees, expenses of administration and taxes of all kinds which might lawfully be levied or assessed against the gifts contained or specific property described in said paragraph IX, as modified by paragraph B of the Codicil, or the income therefrom, or the right to take or inherit said gifts or described property, and designated that if any of said charges were lawfully levied or assessed against said gifts or said specific property, or the right to inherit such

gifts or property, then such charges so levied or assessed were intended and designated to be borne proportionately by all the other gifts in said will.''

With this interpretation of paragraph TENTH there can be and there is apparently no disagreement.

(2) ''That decedent did not and did not intend or purport by the provisions of paragraph X of said will to designate that *all* liens, debts, demands, claims, commissions, fees, expenses of administration and taxes assessed against said estate should be charged proportionately against *all* of the gifts in said will; that decedent did not and did not intend or purport by the provisions of said paragraph X to designate that the residuum of said estate should be relieved of any liens, debts, demands, claims, commissions, fees, expenses of administration and taxes, or proportionate part thereof, with which said residuary estate would be chargeable under the provisions of Probate Code, Section 750, in the absence of such designation; that decedent did not and did not intend or purport by the provisions of said paragraph X to designate that the general and specific legacies, devices, and bequests or gifts contained in said will, except the gifts set forth in paragraph IX, as modified by paragraph B of the Codicil thereof, should be chargeable proportionately with said residuary legacy, with a share of *all* liens, debts, demands, claims, commissions, fees, expenses of administration, and taxes levied or assessed against said estate.'' (Italics ours.)

The court then found that the petition for ratable distribution, as supplemented, was contrary to the terms of the will and the law applicable, and did not correctly set forth the items chargeable against the gifts contained in the will and accordingly did not represent the net amount due to the legatees and devisees after deduction of charges. The court then ordered:

(1) That the petition be denied insofar as such petition purports to charge any debts, expenses of administration, taxes, etc., ''in any manner other than as herein set forth.''

(2) ''That upon any distribution of said estate all liens, expenses of administration, etc. be charged against the residuary estate to the full extent thereof (as provided by law), except such liens, debts, demands, claims, commissions, fees, expenses of administration, and taxes, if any, which are by law a lien or charge against the specific property described or gifts contained in paragraph IX, as modified by paragraph B of the Codicil to said will, or the right to take or inherit

said gifts or described property, which said liens . . . if any, shall be borne proportionately by all of the other gifts contained in said will. The taxes, etc. . . . which are by law chargeable against the said specific property described or gifts contained in said paragraph IX as modified, are: a. Ad valorem taxes which became a lien after death of testator; b. Inheritance taxes; c. Federal estate taxes; and d. Income taxes accrued against the trust estate by reason of income derived from said trust property subsequent to the death of the testator and prior to the date of distribution of said trust estate, which said income tax, if any, is properly computable at primary rates solely upon the income of the trust estate created by said will without consideration in any way of the personal income of the beneficiaries of said trust.''

(3) ''As to each other specific bequest of physical property (as distinguished from money) contained in said will, there shall be chargeable against such bequest, income tax accruing after the death of the testator as is attributable to the income of the respective bequest so charged, Federal estate taxes to be charged in accord with the provisions of Probate Code section 970, together with any expenses of repair, upkeep or improvement of such physical property (as distinguished from money) by which such specific property has been preserved or improved.''

As to specific bequests of money, it was ordered that ''there shall be chargeable against each such bequest all ad valorem taxes accruing after death, all inheritance taxes, all Federal estate taxes, as provided by Probate Code section 970, all income taxes accrued against the specific bequest by reason of income derived from said specific bequest subsequent to the death of the testator and prior to the date of the distribution.''

(4) The executors are directed to recompute ratable distribution accordingly. From these four orders appellants appealed.

The conclusion reached by the trial court is not in accord with petitioner's contention that *all* of the burdens of the entire estate, including the burdens lifted from the bequests contained in paragraph NIN*E*TH of the will, shall be charged ratably against all of the other bequests contained in the will, in accordance with the value thereof as set forth in the inventory and appraisement.

The conclusion of the trial court is likewise not in accord with the position of the objecting legatees that *all* of the

burdens of the entire estate, including those lifted from the bequests contained in paragraph NIN*E*TH, should be charged against the residuary bequest.

In arriving at this conclusion the trial court, in an erudite opinion, with which we agree, logically interpreted the provisions of paragraph TENTH of the will. It was pointed out that the bequest contained in paragraph NIN*E*TH was a specific bequest of certain described real property, as opposed to a residuary bequest. (*Estate of De Bernal*, 165 Cal. 223 [131 P. 375, Ann.Cas. 1914D 26] ; Prob. Code, § 161; *Estate of Daly*, 202 Cal. 284 [260 P. 296] ; *Estate of Buck*, 32 Cal.2d 372 [196 P.2d 769].)

█ Under Probate Code, section 750, debts, expenses of administration, or family allowances, in the absence of a specific provision in the will to the contrary, must be paid from the residuary bequest, to the extent of its ability, before any such charge can be made against a specific bequest. (*Estate of de Santi*, 53 Cal.App.2d 716 [128 P.2d 434].)

As to the federal estate tax, section 970 of the Probate Code provides that when the executor has paid an estate tax to the federal government, the amount of the tax so paid, with certain exceptions, shall be equitably prorated among the persons to whom such property is transferred. Sections 971 and 972 of the Probate Code provide the method of proration.

As to the inheritance tax, section 14121 of the Revenue and Taxation Code provides as follows :

''Except as otherwise provided in this article, every executor, administrator, or trustee in charge of or holding in trust any property the transfer of which is subject to the tax imposed by this part, shall deduct the tax from the property, if the property is money, or, if the property is not money, shall collect the tax from the transferee. He shall not deliver or be compelled to deliver the property to any person until he deducts or collects the tax.'' (See, also, *Estate of Rindge*, 136 Cal.App. 263 [28 P.2d 705].)

Under the provisions of the law, the amounts that would be ordinarily chargeable against the distributee or his or her distributive share, in the absence of any direction in the will to the contrary, is thereby fixed and determined. In other words, as pointed out by the trial court, the several distributees or their distributive shares would have been thus burdened in the absence of any provision in the will to the contrary.

The construction and interpretation of paragraph TENTH, as applied to paragraph NIN*E*TH, is readily ascertainable

from its context. None of the parties contend that the trial court erred in its interpretation of these two paragraphs in this regard, with the possible exception as to the constitutionality of sections 970, 971 and 972 of the Probate Code, which question will be hereinafter discussed.

The real question then is this: As to the other devisees or legatees not included in paragraph NINE*TH*, does paragraph TENTH of the will charge the burden, as directed by statute and require that this burden be imposed in some other or different manner?

Paragraph TENTH follows directly after paragraph NINE*TH* or paragraph B of the codicil, which specifically describes certain real property left in trust for the beneficiaries therein named. The testator then proceeds, in paragraph TENTH, to speak about those particular "gifts set forth in paragraph Nineth hereof" and gives them "free and clear of all liens, debts . . . and taxes of *all* kinds levied or assessed against *said* property . . . or in virtue of my death . . . including inheritance and federal estate taxes . . . accruing prior to the distribution of my estate and I direct that all of *said* liens . . . and all of *said* taxes to be paid from the other gifts made in this will. . . ." (Italics ours.)

In support of their contention petitioners' counsel have gone to some length in an endeavor to analyze the grammatical construction of that paragraph. Their construction of this paragraph appears to be a strained one. From the language adopted, it clearly indicates that the testator had reference *only* to the gifts set forth in paragraph NINE*TH* and the taxes thereon arising "in virtue of my death or the transfer of said property, including inheritance and federal estate taxes, and including income taxes" and the proportionate share of debts, fees or expenses of administration etc., that might possibly be a charge "against *said* property." (Italics ours.)

The word "said" has a definite and well-understood meaning. It relates only to that which is "before mentioned." (*Estate of Helm,* 6 Cal.App.2d 752, 758 [45 P.2d 250].)

In *Estate of Bourn,* 25 Cal.App.2d 590, 595 [78 P.2d 193], it is said that "where the will is drawn by a lawyer whose experience and competence are beyond question, the presumption that legal terms embodied in the will are used in their legal sense is all but conclusive."

We adopt the reasoning expressed by the learned trial judge in respect to the interpretation of that paragraph, wherein he said:

"In the first place the testator was an attorney by profession and was well known as a very competent lawyer. This gives *factual* as well as presumptive strength to the belief that the testator was well aware that, unless the residuary estate were insufficient, most of the burdens mentioned by him in paragraph Ten, would not become a charge against the bequest contained in paragraph Nine and that he used these terms to guard against the contingency that the residuary estate might, thru some unforeseen circumstance, become insufficient to meet these charges.

"Next we have the language of the paragraph itself which starts out by referring to the bequest contained in paragraph Nine and the burdens which might be charged against it. Under the maxim 'ejusdem generis' the whole of the following portions of the paragraph, not specifically pointed to something else, would refer back to the burdens to be lifted from the bequest of paragraph Nine. Especially is this true because the paragraph (Ten) is all in one sentence. (*Gist* v. *Craig*, 142 S.C. 407 [141 S.E. 26, 38]; *Noble* v. *Kisker*, 134 Fla. 233 [183 So. 836].)

"More conclusive than either of these matters, however, is the language itself. After finishing his statement that the bequest contained in paragraph Nine should go to the legatee completely free of any burdens whatsoever, the testator then proceeds to direct where the burden thus lifted shall be placed and in so doing, he not only continues his discourse in the same sentence, thereby giving added strength to the maxim 'ejusdem generis', but he also uses the connecting word 'said', clearly indicating that the burdens lifted from paragraph Nine are the ones he is next about to discuss.

"We are clear, then, that by all rules of language construction as well as special rules of legal construction, paragraph Ten relates solely to the lifting of burdens from the bequest contained in paragraph Nine and in placing such burdens elsewhere and that it does not purport to nor does it, in any way disturb the normal disposal of burdens which by law, fall on other bequests of the will."

Petitioners make some point of the fact that the State Controller, in his report, has recommended that the determination of the inheritance tax be made in accordance with petitioners' interpretation of paragraph TENTH; that since

the report was received in evidence for this purpose, the trial court was bound to accord "great respect" to the interpretation placed upon paragraph TENTH of the will by "a high administrative officer in the course of his official duties." (Citing *Bodinson Mfg. Co.* v. *California Employment Com.,* 17 Cal.2d 321, 325 [109 P.2d 935].)

While this general rule may have been employed in certain cases, it cannot be said that the probate court is precluded from placing another and different construction on the provisions of the will where the construction given by the court is reasonable and unambiguous and where, as here, any other construction would be a strained one. (*Estate of Platt,* 21 Cal.2d 343, 354 [131 P.2d 825] ; *Estate of Norris,* 78 Cal. App.2d 152, 159 [177 P.2d 299] ; *Estate of Rath,* 10 Cal.2d 399, 406 [75 P.2d 509, 115 A.L.R. 836] ; *Estate of Bloom,* 213 Cal. 575 [2 P.2d 753] ; *Estate of Lloyd,* 106 Cal.App. 507 [289 P. 892].)

Respondents and cross-appellants Kellas and Crittenden, as well as respondents Regents of the University of California, Atchinson, and Forrest, raise the question of the constitutionality of Probate Code, section 970 et seq. The fourth order of the probate court directed that their proportionate share of the federal estate taxes be charged against them. They argue that if these code sections are invalid and unconstitutional under the due process clause of the Fourteenth Amendment of the federal Constitution and the due process provision (art. I, § 13) and the uniform operation provision (art. I, § 11) of the Constitution of California, then such estate taxes must, like all other debts of the estate, be borne by the residuary legatees, citing *Estate of Elston,* 32 Cal.App.2d 652, 659 [90 P.2d 608]. In this respect it is first argued that these sections are invalid because the act enacting them embraced more than one subject and also because the subject of *proration* of the federal tax was not expressed in its title, citing article IV, section 24, California Constitution, and such cases as *Pierce* v. *Riley,* 21 Cal.App.2d 513 [70 P.2d 206] ; and *Wirringer* v. *Morgan,* 12 Cal.App. 26 [106 P. 425].

In *Riggs* v. *Del Drago,* 317 U.S. 95, 102 [63 S.Ct. 109, 87 L.Ed. 106, 142 A.L.R. 1131], cited by cross-appellants, it was held that a state statute providing for spreading of the burden of federal estate taxes among the distributees of an estate is not necessarily in conflict with the federal tax law and such statute should govern "the ultimate impact of the Federal estate tax." It is therefore argued that there is a

substantial difference between *payment* of the federal estate tax and *apportioning* the amount paid after payment, and that the subject of Probate Code, section 970, i. e., prorating, is not included in the title of the act.

Statutes of 1943, chapter 894, page 2740, is entitled ''An act to add Article 4a (comprising Sections 970 to 977 inclusive) to Chapter 15 of Division 3 of the Probate Code, relating to the payment of Federal estate taxes.''

Article IV, section 24, California Constitution, provides that every act shall embrace but one subject, which subject shall be expressed in its title. Section 822b of the Internal Revenue Code (53 Stats. 127, 26 U.S.C.A., p. 155) provides that the executor, in the first instance, shall pay the federal estate tax.  ▮  The purpose of section 24, article IV of the Constitution with respect to the title of the acts was mainly to prevent legislators and the public from being entrapped by misleading titles to bills whereby legislation relating to one subject might be obtained under the title of another. (*Frank* v. *Maguire,* 201 Cal. 414, 418 [257 P. 515] ; *Heron* v. *Riley,* 209 Cal. 507 [289 P. 160].)  ▮  A reading of the provisions of the legislation here under discussion which follows the title, demonstrates conclusively that only one subject is therein covered, namely, the subject relating to the payment of federal estate taxes. Proration is not in any sense a separate subject, but is a part and parcel of the method of payment as affecting the persons interested in the estate and as to their proportionate shares. We are convinced that the title of the act meets the constitutional requirements and contains reasonably intelligent reference to the subject to which the legislation is addressed. (*People* v. *County · of Imperial,* 76 Cal.App.2d 572 [173 P.2d 352] ; *City of Whittier* v. *Dixon,* 24 Cal.2d 664 [151 P.2d 5, 153 A.L.R. 956] ; *McClure* v. *Riley,* 198 Cal. 23, 26 [243 P. 429] ; *Powers Farms, Inc.* v. *Consolidated Irrigation Dist.,* 19 Cal.2d 123 [119 P.2d 717].)

The remaining argument to which we shall give consideration is that the section here involved does not operate uniformly upon all persons in the same category. A similar argument was advanced in *Estate of Watkinson,* 191 Cal. 591, 599 [217 P. 1073], in regard to the California inheritance tax statute.  ▮  While the federal estate tax is not an inheritance tax, it is a tax on the interest which is shifted, an excise upon the transfer of an estate on the death of the owner. (*Y.M.C.A.* v. *Davis,* 264 U.S. 47, 50 [44 S.Ct. 291, 68 L.Ed. 558] ; *Security First National Bank* v. *Wellslager,*

88 Cal.App.2d 210 [198 P.2d 700].) What is said in *Estate of Watkinson, supra,* as to the act involved being discriminatory, is equally applicable here. As early as 1930, the State of New York enacted a law in relation to apportionment of federal estate taxes. (McKinney's Cons. Laws of N. Y., anno. book 13, Decedent Estate Law, § 124, p. 156. [See, also, historical note, p. 420.] Sections 970 to 977 of the Probate Code are patterned after this enactment. See, also, 2 Laws of Pennsylvania 1947 § 5, Act 565, p. 2762; and Annotated Laws of Massachusetts § 5, ch. 65.)

In *In re Mollenhauer's Will,* 257 App.Div. 286 [13 N.Y.S. 2d 619], that court, in upholding the validity of the proration of the tax, said that the formula prescribed in prorating the tax burden on each beneficiary was not "arbitrary or unequal and unjust in its operation." (See, also, *In re Ryle's Estate,* 170 Misc. 450 [10 N.Y.S.2d 597, 601]; *In re Adams Estate,* 37 N.Y.S.2d 587, 589; *In re Starr's Estate,* 157 Misc. 103 [282 N.Y.S. 957]; *In re Blumenthal's Estate,* 46 N.Y.S. 2d 688; 40 Columb.L.Rev. [1940] 690, 699.)

In *In re Harvey's Estate,* 47 D.&C. 17 [(1943) 350 Pa. 53 (38 A.2d 262, 264)], it was held, as it must be here, that under the constitutional provision requiring uniformity of taxation, the statute lacks no uniformity in its application to all legacies. The variance is due to the graduated federal tax as applied under the rule laid down in the statute. All beneficiaries are affected alike by its application.

Orders affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied January 4, 1949, and petitioners and appellants' petition for a hearing by the Supreme Court was denied February 3, 1949.